[No. 24281.   Department Two.   March 23, 1933.]

NATIONAL BANK OF TACOMA, *Respondent*, v. ETTA BATES ROBERTS *et al.*, *Appellants*, THE TACOMA GENERAL HOSPITAL *et al.*, *Respondents*.[1]

[1]Reported in 20 P. (2d) 25.

*Charles O. Bates* and *Robert M. Davis,* for appellants.

*Chadwick & Chadwick,* for respondent.

BLAKE, J.—The plaintiff, as trustee under the will of Ollie A. Roberts, brought this action for the purpose of having the will construed relative to the trustee's power to make a certain investment. All the beneficiaries, direct and contingent, under the will were brought in as parties defendant. The principal direct beneficiaries under the trust created by the will are Mary Howard Roberts and John Bates Roberts, paternal grandchildren of the testatrix, and their mother and guardian, Etta Bates Roberts. The court, after disposing of plaintiff's petition to the satisfaction of all parties, permitted Etta Bates Roberts, as guardian of her children, to file a petition herein praying for a construction of the will with respect to their rights as beneficiaries under the trust. From a judgment adverse to her contentions, the guardian appeals.

The respondent was named as executor and trustee under the will. The estate was valued in excess of $750,000 when, at the close of the administration, the respondent assumed its functions as trustee. The will

provides that the estate shall be held in trust until 1951, unless both John Bates Roberts and Mary Howard Roberts should die without issue prior to that time. In such case, the trust is to terminate and the property to be distributed to certain contingent beneficiaries.

For the present, we are concerned only with the provisions of the will affecting Mary Howard Roberts and John Bates Roberts. The will was executed January 17, 1929. They are provided for in subdivision (d) of paragraph "Fifth." This entire subdivision was revoked and the terms thereof modified by a codicil executed September 3, 1930. The codicil affected no other part of the will. In considering the contentions of appellant, it is necessary to compare the terms of subdivision (d) of the will, as originally executed, and the terms of the codicil.

The terms of subdivision (d) may be divided into four parts: (1) Directing the trustee to make provision for the support and education of the grandchildren, not to "exceed the sum of $250 per month for any one," and "only during such portion or portions of said trust period in which such child shall be attending school or college and the vacation periods intervening;" (2) expressing the hope and desire that her grandchildren should receive an education consistent with their station in life, the testatrix directs that, after graduation, each child should be provided with sufficient funds for a trip around the world, such trip not to last for more than one year; (3) after graduation and the trip around the world, the "trustee shall pay to each of my grandchildren for all intervening time until the trust period is ended, the sum of........................ ($................) per month;" (4) should John Bates Roberts desire to go into business, the trustee is authorized to advance him such sum as it,

in its judgment, deems proper and sufficient, and a similar provision is made for Mary Howard Roberts and her husband, in case she should marry during the terms of the trust.

The provisions of the codicil may likewise be segregated into four parts. The first part provides:

"I will and direct that my trustee shall pay out of the net income of the trust estate the sum of three hundred dollars ($300) per month for the support and /or education of each of my grandchildren, viz: John Bates Roberts and Mary Howard Roberts."

The second part provides for the trip around the world in almost identical terms as in the original will. The third part provides:

"After graduation . . . and said trip . . . my trustee shall pay to each of my grandchildren for all intervening time until the trust period is ended, the sum of three hundred dollars ($300) per month."

The fourth part provides for advancements to John Bates Roberts and the husband of Mary Howard Roberts (should she marry) to aid them in getting started in business.

It is to be noted that there are three essential differences between subdivision (d) of the original will and the codicil: First, that the provision for support and education is increased from $250 to $300 per month; second, the specific limitation contained in the original is absent from the codicil; and third, the amount to be paid each child after graduation and the trip around the world is fixed at $300 per month in the codicil, where it was left blank in the original.

It is the contention of the guardian that, by the omission from the codicil of the words limiting the allowances for support and education to $250 (and another provision to be hereafter noted), the testatrix manifested an intention to give the trustee discretionary

power to allow the children sums in excess of $300 for their support and education. Making her contentions specific, she asserts that the trustee may and should pay, in addition to the $300 per month, the tuition of John at Moran school for boys, the tuition of Mary at Marlborough school for girls, taxes on account of a half interest in the home inherited from their father, and the expenses of surgical and medical care incurred by John on account of an operation for appendicitis.

Before discussing these contentions, it is necessary to notice two other provisions of the will. The trustee is directed to pay to the guardian, for her own use, the sum of $500 per month during the life of the trust, unless she re-marries. Subdivision (a) of paragraph "Fifth" confers upon the trustee powers of control, management of the properties of the trust estate, and authority for the investment of the funds thereof. In this connection, the will provides:

"I direct that my said trustee shall manage the said trust property in such manner as it may deem and consider to be for the best interests of the trust and of the beneficiaries thereof . . ."

Lifting this phrase from its context, the guardian argues that it supports her claim of discretionary powers granted to the trustee under the codicil. We do not think the phrase just quoted is susceptible of such interpretation, for it is followed in the same sentence by:

". . . with full power to lease, improve, change, build or rebuild, alter, repair, sell, dispose of, convey, mortgage or hypothecate any or all of the said trust property, including all reinvestments of the same or any part or parts thereof; . . ."

To carry the phrase over into the codicil, as giving the trustee discretionary power to increase the allow-

ances therein provided, would place a fanciful construction on the documents, which we think would be clearly unwarranted.

■ So we go back to the codicil and its construction. It would seem that it is too plain for construction; but, because of the omission therefrom of the words in subdivision (d) of the original will specifically limiting the amount to be paid the children, it seems necessary to make some inquiry as to the intent and reason of the testatrix in omitting them and raising the allowances from $250 to $300 per month.

It will be recalled that the codicil was executed September 3, 1930. During the summer of 1930, the testatrix had made arrangements for John's matriculation at Moran school and Mary's at Marlborough. The tuition and living expenses at the latter amounted to $150 per month, with an additional $50 per month for extras. At Moran, the tuition and living expenses amounted to $1,400 per year. We think it is apparent that the increase in the allowance from $250 to $300 per month is to be accounted for by the expensive education that she had arranged for them. Consequently, the omission of the words of limitation is without significance.

We think this is doubly manifested in that the same amount is allowed in the codicil during the life of the trust, subsequent to graduation, whereas, in the original will, the allowance thereafter was left blank. Furthermore, the testatrix provided for other allowances, namely, the trips around the world and allowances for aid in business enterprises. We do not think the expressed desire that the children should receive an education "consistent with their station in life" aids the guardian's contention, for the testatrix continues the sentence:

". . . and *believing that travel is educational,* I direct that my trustee give to them and/or either of them, *after graduation,* or if either of them come to full age *without graduation* . . . sufficient funds . . . to make a trip to any part of the world or around the world."

The desire so expressed cannot logically be carried back and interpreted to empower the trustee to pay allowances for support and education in excess of the $300 theretofore provided.

█ Courts rarely permit the encroachment upon the principal or income of a trust estate for maintenance of a beneficiary beyond the allowance fixed by the testator. The circumstances under which such encroachment is countenanced are stated in 26 R. C. L. 1379, as follows:

"Where peculiar circumstances have arisen not expressly provided for by the trust instrument, and not anticipated by its author, the court in the emergency that has arisen has jurisdiction to sanction acts by the trustees which in ordinary circumstances they would have no power to do, and may hasten the enjoyment of trust funds in certain cases. It is not, however, the convenience or even the benefit of the beneficiaries which will move the court to hasten enjoyment of trust funds, but the necessity of varying the terms of the trust in order to give effect to the ultimate intention of its creator. And the court will so direct a use of such income in behalf of a beneficiary only where an exigency, nonexistent at the creation of the trust, has arisen, which exigency is one not then anticipated by the testator; for if the testator saw or foresaw the plight of his beneficiary, and yet intended that his gift should be withheld until he matured in age, it would be beyond the power of the court to alter a purpose thus declared. This power is most frequently exercised where property is held in trust for infants who have not sufficient means for their maintenance or proper education, but it has also been exercised in other cases where the exigencies of the situation have seemed to demand it."

We are not willing to subscribe to a doctrine that a testator or testatrix, in order to limit the allowance to a beneficiary, must, after specifying a particular sum, say: *"This and no more."* Without adding such, or such like, words, we think the testatrix has made her intent as plain as language can make it that she expected her grandchildren to support and educate themselves on $300 per month. Any other interpretation of this will and codicil will call for a like interpretation with reference to the allowance of $300 per month provided for during the life of the trust subsequent to graduation and the trips around the world.

We do not think that John's operation for appendicitis was such an extraordinary and unforeseen event as to come within the rule above quoted from 26 R. C. L.

■ Nor do we find any authority in the will or in law that would justify the trustee using funds of the trust estate for payment of taxes on property belonging to the children.

■ The next contention of the guardian has been somewhat difficult to get hold of. The wards have something of an estate left them by their father. The guardian alleges that, in connection with this estate and for the preservation of the rights of the wards, as beneficiaries under the trust created by their grandmother's will, it was necessary for her to employ an attorney; that she did employ Charles O. Bates, who rendered services, compensation for which should come out of the trust estate.

In the briefs this claim is presented as though the action were by the attorney against the trustee for compensation on account of services to the trust estate. If such were the action, we could see the pertinency of the discussion of express, implied and quasi contracts and estoppel. Of course, it is elementary that

trusts are liable for compensation on account of services rendered by attorneys in- the interest of the trusts and at the behest of the trustees. Likewise, it is elementary that beneficiaries cannot employ attorneys and render the trust liable for their fees, except, perhaps, at the end of successful litigation against the trustee, wherein he is adjudged derelict in the management of the trust estate.

Compensation for the attorney is not claimed here on the latter theory, but, apparently, on the theory that, at the behest of the guardian, the attorney rendered services to the trust estate, which services the trustee accepted, and for which it should, therefore, pay. The trustee, however, asserts that it has paid Mr. Bates in full for all services rendered by him to the trust estate at its request. He was paid from the trust estate $2,500 for acting as guardian *ad litem* for the wards at the close of the administration of the estate; $250 for acting as guardian *ad litem* on another occasion; and $300 and $150, respectively, on two other occasions when his advice was sought by the trustee. If he has rendered any other services to the trust estate at the instance of the trustee, for which he has not been compensated, he will have to resort to an action against the trustee. There is nothing in the will or the law that would warrant the trustee in paying him from the trust estate for services rendered to the guardian and the estates of her wards.

The judgment is affirmed.

TOLMAN, STEINERT, and MAIN, JJ., concur.

BEALS, C. J. (dissenting in part)—I am in accord with the opinion of the majority save in so far as the same holds that the trustee should not advance funds in excess of the monthly payments provided for by the will to cover the expenses of the grandson's operation.

The testatrix carefully provided for the education of her grandchildren. It is inconceivable that she could have intended that disbursements required by the illness of these children should be taken care of out of the money which she had provided for their education. They were practically the sole objects of her bounty, and the will and the codicil show how carefully she estimated the money which she desired spent upon their education. The serious illness of one of the children might well absorb a year's allowance and seriously interfere with the education of the child for which the grandmother so carefully provided.

A very similar situation was considered by this court in the case of *Cotton v. Bank of California,* 145 Wash. 503, 261 Pac. 104; and, in my opinion, that case requires a benevolent construction of the will now before us and a holding that the trustee should pay the expenses of the grandson's illness in addition to the monthly payments provided for by the will.

I accordingly dissent from the opinion of the majority in so far as this particular relief is denied.